```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                     SOUTHERN DIVISION at LONDON
```

MATTHEW COLLINS, JR.,            )
                                 )
     Plaintiff,                  )
                                 )   Civil Action No. 08-396-JMH
v.                               )
                                 )
MICHAEL J. ASTRUE, COMMISSIONER  )
OF SOCIAL SECURITY,              )   **MEMORANDUM OPINION AND ORDER**
                                 )
     Defendant.                  )
                                 )
                                 )

                    **       **       **       **       **

This matter is before the Court on cross motions for summary judgment [Record Nos. 11-3 and 12][1] on Plaintiff's appeal of the Commissioner's denial of his application for Supplemental Security Income benefits. The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Matthew Collins, Jr. has previously applied for Supplemental Security Income benefits in prior applications. The most recent application prior to the instant application was filed on September 13, 2003 and was denied by hearing decision on December 9, 2004. The determination was affirmed by the Appeals

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

Council and the District Court in March 2007. The prior decision is final and the instant application addresses the unadjudicated period beginning December 10, 2004. (Transcript of Record "Tr." 20).

Plaintiff protectively filed an application for Supplemental Security Income benefits on January 10, 2005. (Tr. 65). Plaintiff's application was denied initially and upon reconsideration. On December 14, 2006, Administrative Law Judge ("ALJ") Donald A. Rising conducted a hearing on Plaintiff's application. By written decision dated May 15, 2007, ALJ Rising denied Plaintiff's application (Tr. 29), finding that while Plaintiff has severe impairments (Tr. 22), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 28), and Plaintiff has not been under a disability, as defined in the Social Security Act, since December 10, 2004. (Tr. 29).

At the time of the hearing, Plaintiff was forty years old. (Tr. 582). Plaintiff graduated from high school and had some additional vocational training. (Tr. 583). Plaintiff has past relevant work as a laborer. (Tr. 28). After reviewing the entire record, the ALJ found, *inter alia*, that Plaintiff suffers from: diabetes; seizure disorder; and has a history of polysubstance abuse. (Tr. 22). The ALJ concluded that Plaintiff has the residual functional capacity to perform various jobs available in

the national economy and thus, is not disabled. (Tr. 28).

In this appeal, Plaintiff claims: the ALJ erred by failing to afford proper weight to the medical opinion of Dr. Cornett; the Residual Functional Capacity ("RFC") determination is not supported by substantial evidence of record; and the hypothetical question posed to the vocational expert could not accurately portray the Plaintiff's impairments.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.
>
> 4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity? If not, the individual is not disabled. If so, proceed to step 5.
>
> 5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational

>       factors" of age, education, and work experience?  If so,
>       the individual is disabled.  If not, the individual is
>       not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility.  *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion.  *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## IV. ANALYSIS

### A. Treating Physician's Opinion

Plaintiff argues that ALJ Rising erred in failing to afford the proper weight to the opinion of Plaintiff's treating physician, Dr. Cornett. In the Medical Diabetes Mellitus Residual Functional Capacity Questionnaire dated 7/25/2006, Dr. Cornett diagnosed Plaintiff with Insulin Dependent Diabetes Mellitus (Type I); diabetic neuropathy; chronic lower back pain; and seizure disorder. (Tr. 473). Dr. Cornett opined that Plaintiff's impairments lasted or can be expected to last at least twelve months; that depression and anxiety affect Plaintiff's physical condition (*Id.*); that Plaintiff frequently experiences pain severe enough to interfere with attention and concentration needed to perform even simple work tasks; that he is incapable of even "low stress" jobs; is functionally limited in a competitive work situation by being able to walk 0 blocks; sit at one time for 30 minutes; stand at one time for 20 minutes; sit, stand, or walk less than 2 hours in an 8-hour working day; would need to lie down; legs should be elevated 30-35% of an 8-hour work day; never lift or carry over 20 pounds; rarely lift or carry 10 pounds; frequently lift or carry less than 10 pounds; never crouch/squat; rarely climb stairs; climb ladders; stoop; or twist; would have significant limitations with reaching,

5

handling, or fingering (Tr. 475); avoid even moderate exposure to extreme cold/heat, high humidity, wetness, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust; and avoid all exposure to chemicals; and on average would likely be absent from work more than four days per month as a result of his impairments or treatment.  (Tr. 476)

ALJ Rising requested clarification of Dr. Cornett's opinion and requested objective medical evidence to support her diagnosis and opinion.  (Tr. 493).  The request was not addressed and the inquiries were not given explanation.  (Tr. 24).  The ALJ observed that there was no objective evidence that Dr. Cornett had examined the Plaintiff prior to the date upon which the Medical Diabetes Mellitus Residual Functional Capacity Questionnaire was filled out. (Tr. 23, 479-80).

ALJ Rising requested a medical expert, Dr. Blickenstaff, to review the evidence in the record and testify as to Plaintiff's residual functional capacity. (Tr. 597). Dr. Blickenstaff opined that the medical evidence established impairments of insulin-dependent diabetes mellitus, possible seizure disorder, and a history of polysubstance abuse.  (Tr. 156).  In addition, Dr. Blickenstaff opined that Plaintiff's impairments as established by the medical evidence, combined or separately, did not meet or equal in severity any impairment described in the Listing of Impairments. *(Id.).*  Further, Dr. Blickenstaff reviewed the diagnosis and

opinion of Dr. Cornett (Tr. 472-76) and concluded that there are no objective physical examination findings that support the diagnosis of neuropathy, and that Dr. Cornett's limitations appear to be based solely upon Plaintiff's reported symptoms. (Tr. 157).

The ALJ properly considered Dr. Cornett's opinion, but did not find that her opinion was supported by objective medical evidence in the record and therefore gave the opinion no weight. While the opinions of treating physicians are entitled to much deference, *see Warner v. Comm'r of Social Security,* 375 F.3d 387, 390 (6th Cir. 2004), the deference given to a particular physician's opinion depends on the extent to which it is supported by objective medical signs and the record as a whole. *See Walters v. Comm'r of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997).

There was substantial evidence to support the ALJ's decision not to give Dr. Cornett's opinion controlling weight. First, the physical limitations placed on Plaintiff by Dr. Cornett were not supported by objective medical evidence. (Tr. 24). Second, the restrictions Dr. Cornett placed on Plaintiff were inconsistent with restrictions recommended by Dr. Blickenstaff, a medical expert, and with the record as a whole. (Tr. 156-58, 472-76). After review of the medical evidence, Dr. Blickenstaff opined that Plaintiff retained the ability to sit, stand, or walk 6 hours in an 8-hour day; to lift and carry up to twenty pounds frequently and fifty pounds occasionally; and to bend, squat, crawl, climb, and reach

frequently. (Tr. 158). Furthermore, Dr. Blickenstaff concluded that Plaintiff can use his hands for repetitive actions such as simple grasping, pushing/pulling, and fine manipulating, and use his feet to operate foot controls. Plaintiff should not engage in activities around unprotected heights, around moving machinery, or driving automobile equipment, and has a mild restriction on exposure to marked changes in temperature or humidity. (*Id.*) Accordingly, this Court finds that the ALJ's decision to afford Dr. Cornett's opinion no weight is supported by substantial evidence.

**B. Residual Functional Capacity**

Plaintiff next argues that the ALJ's determination of Plaintiff's residual functional capacity is not supported by substantial evidence of record because Plaintiff's subjective allegations of disabling impairments and restrictions is supported by objective medical evidence of an impairment that could be reasonably expected to produce his alleged disabling impairments and restrictions. Additionally, Plaintiff claims that the ALJ did not adequately explain why he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's reported symptoms not entirely credible. The Sixth Circuit has said that subjective assessment of pain symptoms is relevant to determining whether or not Plaintiff is disabled, but is not conclusive evidence establishing a disability. *See Warner*, 375 F.3d 387, 392. "In evaluating the claimant's subjective

8

complaints of pain an administrative law judge may properly consider the claimant's credibility, and we accord great deference to that credibility determination." *Id*. The ALJ found that Plaintiff's medially determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms is not entirely credible. (Tr. 27).

The evidence shows that Plaintiff has been diagnosed with diabetes and seizure disorder. The ALJ noted that Plaintiff is blatantly noncompliant with his medications and recommendations for diet and exercise. Plaintiff alleges leg symptoms, but the ALJ found no objective evidence to support a conclusion of diabetic neuropathy. The ALJ noted that though Dr. Cornett found diabetic neuropathy, there is no concomitant clinical evidence to support this, and Dr. Cornett did not respond to the clarification inquiry. Plaintiff has subjectively reported recurring seizures, but his medication levels are therapeutic and there is no medical documentation for these allegations. Plaintiff has not required emergency care specific to recurring seizures during the time period under consideration. The ALJ noted that Plaintiff's testimony purporting severe debilitation is not reflected in the record, which shows that Plaintiff is able to engage in a wider range of activities than alleged. In pre-hearing documents, Plaintiff reported that he does nothing but sleep and watch television. However, evidence in the record shows that Plaintiff

contributes to the care of a minor child, had a DUI citation in October 2004, and Plaintiff reported to a physician that he had a hypoglycemic episode while "wrestling" with his father in October 2005. (Tr. 27, 28). The ALJ's determination that Plaintiff's allegations were not entirely credible is supported by substantial evidence in the record. Further, "since the ALJ had the opportunity to observe the demeanor of [the plaintiff], his conclusions with respect to credibility should not be discarded lightly." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 2001). This Court finds that the ALJ's Residual Functional Capacity determination is supported by substantial evidence of record.

**C. Hypothetical Question to Vocational Expert**

Plaintiff's final argument is that the ALJ's decision to rely on the vocational expert's testimony that Plaintiff could perform light work is not supported by substantial evidence of record because the hypothetical question posed to the vocational expert did not accurately portray Plaintiff's impairments. Plaintiff argues that the ALJ erred by failing to include in the hypothetical question the following restrictions imposed by Dr. Starkey: Plaintiff's ability to relate to others in a corroborative and cooperative fashion appears to be marginal; and that Plaintiff's ability to tolerate the stressors and pressures associated with most day-to-day work setting also appears marginal. (Tr. 228).

10

Additionally, Plaintiff argues that the ALJ erred in failing to include Dr. Ross and Dr. Demaree's findings of mild and moderate limitations as set forth in the Psychiatric Review Technique Forms (Tr. 396-423). Plaintiff suggests that the ALJ formed his own lay opinion, ignoring all psychological opinions and conclusions.

The record indicates that Dr. Ross and Dr. Demaree's findings on 4/27/2005 and 11/21/2005 of moderate limitations (Tr. 406, 420), were affirmed by Dr. Demaree on 11/25/2005 in the Mental Residual Functional Capacity Assessment ("MRFCA"). (Tr. 426). The limitations outlined in the MRFCA were all included in the hypothetical question to the vocational expert. (Tr. 612). Further, the record indicates that the consulting psychologist, Dr. Starkey found that the Plaintiff's Global Assessment of Functioning Scale score to be 58. (Tr. 229) A score of 58 is indicative of "moderate" symptoms/limitations. (Tr. 25)

The vocational expert opined that if marginal meant the same thing as seriously limited but not precluded or marked, it would preclude Plaintiff from maintaining competitive employment. (Tr. 613). The term marginal is not defined in the record. The vocational expert noted that the term marginal is not normally used when describing physical or mental limitations. (Tr. 613). "An ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health and Human Servs.,*

11

987 F.2d 1230, 1235 (6th Cir. 1993). This Court finds no error in the ALJ's decision to exclude "marginal" limitations from the RFC, when it is not clear what the consulting psychologist meant when the term was originally used. Furthermore, this Court finds that there is substantial evidence in the record to support the ALJ's decision that Plaintiff has moderate mental limitations. Accordingly, the ALJ's hypothetical question to the vocational expert was supported by substantial evidence.

## V. CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That the defendant's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED;** and

(2) That the plaintiff's motion for summary judgment [Record No. 11] be, and the same hereby is, **DENIED.**

This the 4th day of November, 2009.



Signed By:
**Joseph M. Hood**
Senior U.S. District Judge

12